IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 22, 2013 Session

## PEARLIE MAE DUNIGAN, Next of Kin/Personal Representative of Estate of GROVER DUNIGAN, Deceased v. STATE OF TENNESSEE

Direct Appeal from the Claims Commission of the State of Tennessee
No. 20110513     Nancy Miller-Herron, Commissioner

No. W2012-01245-COA-R3-CV - Filed June 27, 2013

This appeal involves a claim for damages filed with the Tennessee Claims Commission, arising out of the death of an inmate while he was housed in a state penitentiary. The Claims Commission denied the claimant's motion for a default judgment. Thereafter, the Claims Commission determined that the gravamen of the complaint was for medical malpractice, and consequently, it granted the State's motion to dismiss based upon the claimant's failure to comply with various provisions of the Medical Malpractice Act. The claimant appeals. For the following reasons, we affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Claims Commission Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Pearlie Mae Dunigan, Chattanooga, Tennessee, *pro se*

Robert E. Cooper, Jr., Attorney General and Reporter, William Young, Solicitor General, Pamela S. Lorch, Senior Counsel, Nashville, Tennessee, for the appellee, State of Tennessee

# MEMORANDUM OPINION[1]

## I. FACTS & PROCEDURAL HISTORY

On December 16, 2009, Grover Dunigan died while he was housed as an inmate at the West Tennessee State Penitentiary in Henning, Tennessee. In November of 2010, several members of Mr. Dunigan's family filed claims with the State of Tennessee Division of Claims Administration seeking to recover damages based upon Mr. Dunigan's death. At least five separate claims were filed by Mr. Dunigan's sisters, his brothers, and his mother. One of the claims was filed by Annette Jackson (Mr. Dunigan's sister) on behalf of Pearlie Mae Dunigan (Mr. Dunigan's mother). The claim alleged that Mr. Dunigan "met an untimely death due to prison officials blatant gross negligence & deliberate indifference to the serious/sever[e] medical condition" of Mr. Dunigan. (capitalization and internal quotation marks omitted). The claim contained the following factual allegations:

> On December 10, 2009, Mr. Dunigan reported to what the prison system labels "Sick-Call" {note; this is a procedure all TDOC inmates must follow in order to be seen by the nurse, doctor and or nurse practitioner} A Donna Chisholm whose signature is shown on the "sick-call" form that Mr. Dunigan Filled out, - diagnosed Mr. Dunigan and ordered that he report back to his housing unit and be placed on an AVO = "Restricted/limited activity" for three days, due to his medical problem" . . . {note; this doctor's order was applicable until the 10th day of December 2009}... Obviously sometime during that period of time Mr. Dunigan became "Too sick to remain" in his regular housing unit and was placed in the infirmary. {note; this is an area where inmates who become so seriously sick that they require more closely monitored medical attention are placed/housed, even to the extent of sending the inmate to an outside health care facility}...
>
> This was an obvious "Mis-Judgment" medical call by one of the prison system's medical staff members, and inevitably led to the untimely demise of Mr. Dunigan.
>
> TDOC's own policy mandates that "If and whenever an inmate becomes severely ill, he/she must be moved to an outside hospital. Mr. Dunigan Died

---

[1]   Rule 10 of the Rules of the Court of Appeals of Tennessee states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

while the prison system debated over whether or not they should send him to an outside hospital. A Thyroid problem could have been easily cured if prison administrators had acted pursuant to the severe medical need/condition of Mr. Dunigan.

The other four claims contained essentially the same allegations.

On February 4, 2011, the claims were transferred from the Division of Claims Administration to the Tennessee Claims Commission pursuant to Tennessee Code Annotated section 9-8-402(c).[2] On February 11, 2011, the Claims Commission entered an "Initial Order Governing Proceedings," which directed the claimants to file a formal complaint. Two separate complaints were filed on March 10, 2011. Mr. Dunigan's sister Pearlene Kelly filed one complaint, purportedly "for the Estate of 'Former Inmate Grover Dunigan,'" and a second complaint was filed by his sister Annette Jackson on behalf of his mother Pearlie Mae Dunigan, also stating that it was "for [the] Estate of Grover Dunigan." The complaint filed by Mr. Dunigan's mother alleged that Mr. Dunigan "met an un-timely death while in the custody of the State OF Tennessee Department OF Corrections' [hereinafter referred to as the TDOC] West Tennessee State Penitentiary, located in Henning Tennessee, as a direct result of TDOC's Gross Negligence & Deliberate Indifference to the Serious immediate medical needs/care of former inmate Grover Dunigan."

On April 20, 2011, the State of Tennessee filed a motion for an extension of time to respond to the complaints, stating that further time was needed to investigate the matter and to file a proper response. The Claims Commission entered an order granting the motion and extending the time for the State to respond until May 20, 2011. On May 19, 2011, the State filed a motion to strike, in which it noted that two separate complaints had been filed by different parties. The State asked the Commission to direct the claimants to submit proof as to which of them had the legal authority to represent the Estate of Grover Dunigan. The State asked the Commission to determine the proper person to represent the Estate and to strike the complaint submitted by the person who lacked authority, so that the State could then respond to the remaining complaint.

Before the Commission ruled on the motion to strike, a motion for default judgment

---

[2] Tennessee Code Annotated section 9-8-402(c) provides, in relevant part:

The division of claims administration shall investigate every claim and shall make every effort to honor or deny each claim within ninety (90) days of receipt of the notice. . . . If the division fails to honor or deny the claim within the ninety-day settlement period, the division shall automatically transfer the claim to the administrative clerk of the claims commission.

was filed by Annette Jackson acting on behalf of Pearlie Mae Dunigan. She argued that a default judgment should be entered against the State because it still had not filed a response to the original complaint she filed with the Commission. The State filed a response in which it pointed out that it had appeared and filed a motion to strike the dual complaints.

On June 15, 2011, the Commission entered an order finding that "in order for this claim to proceed before the Commission, the Estate's legal representative must be established." The Commission ordered the various claimants to submit proof of their authority to represent Mr. Dunigan's Estate, and it explained that once the Commission made a determination as to the proper representative of the Estate, it would rule on the State's motion to strike the improper complaint. In response, Mr. Dunigan's sisters submitted affidavits in which they "yielded" to the right of Mr. Dunigan's mother, Pearlie Mae Dunigan, to pursue the claim as his next of kin.

On July 11, 2011, the Commission entered an order granting the State's motion to strike the complaint filed by Pearlene Kelly, and it ordered the State to file its responsive pleading by August 15, 2011. The order also denied the motion for default judgment filed by Pearlie Mae Dunigan.

On August 12, 2011, the State filed a motion to dismiss the remaining complaint, filed by Pearlie Mae Dunigan (hereinafter, "Claimant"), for failure to state a claim, because her formal complaint failed to state any facts other than that Mr. Dunigan died while incarcerated, as a result of negligence and deliberate indifference, and it did not specify what events occurred that allegedly constituted negligence or indifference. Claimant filed a response and a "Supplemental Pleading," in which she sought to supplement the record with Mr. Dunigan's medical records and a letter from a registered nurse who had reviewed Mr. Dunigan's medical records. In the letter, the nurse opined that the diagnosis made by the prison's medical doctor indicated a "medical emergency," for which the medical doctor should have transferred Mr. Dunigan to an emergency facility. The supplemental pleading filed by Claimant alleged that "the Tennessee Department of Corrections owed the Deceased, Grover Dunigan a *duty of due care to provide adequate medical care* and treatment" while he was an inmate. (emphasis in original). In an attempt to demonstrate that the "Defendants" had breached that duty, Claimant's pleading alleged six facts:

1.  The medical testing and reports conducted by Defendant medical personnel together with the Autopsy report of the decedent indicate Squamous Cell Carcinoma.
2.  The Autopsy reports that the pathology most likely contributed to the death of Claimant was Atherosclerotic Coronary Artery Disease.
3.  Based on the lab findings of December 15, 2009 indicated

-4-

"inflam[m]atory process", abnormal Urinalysis- increased protein, incre[a]sed specific gravity, Keotones and occult blood sug[g]esting acute kidney injury.

4.    Claimant was diagnosed with symptoms of a "Thyroid Storm["] indicating a medical emergency.

5.    Claimant was not transported to an Emergency Facility in accordance with departmental policies and procedures.

6.    Although Claimant presented Fever greater than 101 multiple times Blood Cultures were not performed even though symptoms of Sepsis were present multiple times and Claimant was not transported to an Emergency Facility in accordance with departmental policies and procedures.

The supplemental pleading alleged that the "Defendant's negl[i]gent breach of duty was the direct and proximate cause" of Mr. Dunigan's death.

After the supplemental pleading was filed, the State filed a motion to dismiss based upon the Claimant's failure to comply with various provisions of the Tennessee Medical Malpractice Act, including Tennessee Code Annotated section 29-26-121, which requires sixty-day notice to defendant health care providers prior to the filing of a complaint for medical malpractice, and section 29-26-122, which requires that a certificate of good faith be filed along with the complaint.[3] The State asserted that Claimant had not demonstrated any extraordinary cause for failing to comply with the Act's requirements.

Claimant filed a response to the motion to dismiss, basically arguing that her claim was not one for medical malpractice. She argued, "Adequate medical care is not the same as negligent medical treatment."

On April 26, 2012, the Claims Commission entered an order granting the State's motion to dismiss the complaint. The order included the following relevant findings:

Under Tennessee law, where a complaint alleges facts relating to services that require specialized training, such as a determination of whether medical symptoms require emergency transport to an outside hospital, the attendant duty to such services is the professional duty arising from the

---

[3] In 2012, while this case was pending, numerous sections of the Medical Malpractice Act were amended to replace the "medical malpractice" language with the phrase "health care liability." Because the term "medical malpractice" was used in the relevant statutes at the time of this action, we will continue to use it throughout this opinion.

provision of medical care. It is clear, and the Commission therefore FINDS, that the gravamen of the Claimant's claim is one for medical malpractice.

The Commission pointed out that Claimant's initial claim, filed with the Division of Claims Administration, alleged that a "'Mis-Judgment' medical call by one of the prison system's medical staff members" led to Mr. Dunigan's demise, and her supplemental pleading outlined the ways that the State allegedly failed "to provide adequate medical care." The Commission noted that a failure to comply with the requirements of the Medical Malpractice Act can only be excused upon a showing of extraordinary cause, or if the defendant failed to comply with a request for medical records, and it stated, "Under the facts of this case, the Commission regrettably has no authority to excuse compliance with § 29-26-121."

Claimant timely filed a notice of appeal. That same day, Claimant filed a motion to reconsider with the Claims Commission, in which she claimed that she was "prevented from knowing and/or ascertaining who the parties were to be sued" until she received the State's discovery responses while this case was pending, and she "was therefore prevented [from] complying with TCA 29-[2]6-122." Claimant also argued, in her motion to reconsider, that "TDOC Wardens are not healthcare providers but administrators." Claimant argued that the prison warden is responsible for ensuring that inmates have timely access to healthcare pursuant to Tenn. Code Ann. § 4-3-603 and -606, and she claimed that the warden's duty was "over and above the healthcare provider(s)." She again asserted that "adequate medical care is not the same as negligent medical treatment."

The Commission entered an order denying the motion to reconsider on July 13, 2012. The Commission again recited the aforementioned allegations from Claimant's initial claim and her supplemental pleading and found that the gravamen of the complaint was medical malpractice. The Commission found that no certificate of good faith had been filed pursuant to Tennessee Code Annotated section 29-26-122, and it stated:

> Claimant references no cause justifying waiver of the certificate of good faith other than the contention that this cause of action is not one for medical malpractice but for negligent care, custody and control of persons under Tenn. Code Ann. § 9-8-307(a)(1)(e). Although the Commission recognizes the difficulty of handling a medical malpractice claim *pro se*, Claimant has demonstrated no cause that would support the waiver of Tenn. Code Ann. § 29-26-122, much less extraordinary cause. Thus, it is simply not in the discretion of the Commission to waive the requisites of the aforementioned statute.

## II.   ISSUES PRESENTED

Claimant presents the following issues, as we perceive them, for review on appeal:

1.      Whether the Commission erred in denying Claimant's motion for default judgment;
2.      Whether the Claimant properly asserted a claim against the warden; and
3.      Whether the Claimant's failure to file a certificate of good faith should have been excused on the basis of extraordinary cause.

For the following reasons, we affirm the decision of the Claims Commission.[4]

## III.   DISCUSSION

### A.      Motion for Default Judgment

Tennessee Rule of Civil Procedure 55.01 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered[.]"[5] On appeal, Claimant argues that the Claims Commission should have granted her motion for default judgment against the State due to its delay in filing a responsive pleading in this matter. She claims that the State failed to respond for more than six months after her initial claim was filed. A short recap of the timeline of events is helpful in reviewing this issue:

• November 2010      Five separate claims were filed with the Division of Claims Administration on behalf of Grover Dunigan

• Feb. 2, 2011      The claims were transferred to the Claims Commission

---

[4] Although Claimant was the appellant in this matter, she did not appear at oral argument before this Court on May 22, 2013. On June 10, 2013, Claimant filed a written "Notice" with this Court stating that she was not notified of the date of oral argument, and therefore, she asked this Court to consider additional written arguments, which she submitted along with her "Notice." We have considered Claimant's additional written arguments in resolving the issues before us.

[5] With certain exceptions, proceedings before the Claims Commission are conducted pursuant to the Tennessee Rules of Civil Procedure. *Hembree v. State*, 925 S.W.2d 513, 515 n.5 (Tenn. 1996); *see* Tenn. Code Ann. § 9-8-403(a)(1); Tenn. Comp. R. & Regs. 0310-01-01-.01. Because the Commission's Rules of Procedure do not modify Tennessee Rule of Civil Procedure 55, it applies to claims before the Commission in the same manner as it would to a claim brought in circuit or chancery court. *Cf. Madison v. State*, No. E2003-01537-COA-R3-CV, 2004 WL 101633, at *4 (Tenn. Ct. App. Jan. 22, 2004).

• Feb. 11, 2011    The Commission ordered the filing of a formal complaint

• Mar. 10, 2011    Two separate complaints were filed on behalf of the Estate of Grover Dunigan

• Apr. 20, 2011    The State filed a motion for extension of time to respond to the complaints

• Apr. 20, 2011    The Commission granted an extension of time until May 20, 2011

• May 19, 2011    The State filed a motion to strike, asking the court to determine which claimant had authority to represent the estate and to strike the unauthorized complaint

• June 10, 2011    Claimant filed a motion for default judgment

• June 15, 2011    The Commission entered an order finding that it was necessary to establish the proper legal representative of the estate before the claim could proceed, and ordered the claimants to submit proof on that issue

• June 20, 2011    Claimant's daughters submitted affidavits "yielding" to Claimant's rights

• July 11, 2011    The Commission entered an order striking the complaint filed by Claimant's daughter, ordering the State to respond to the Claimant's complaint, and denying Claimant's motion for default judgment

In short, at the time when Claimant filed the motion for default judgment, the Claims Commission had already entered an order granting the State's motion for an extension of time within which to respond to the complaint, and during that extended time period, the State had filed a motion to strike based on the fact that there were two complaints pending. The Claims Commission determined that it was necessary to establish the proper representative of the Estate before the claim could proceed, and it ultimately granted the State's motion to strike and ordered the State to respond to the remaining complaint filed by the Claimant.

A default judgment is a drastic sanction that is not favored by the courts. ***Henry v. Goins***, 104 S.W.3d 475, 481 (Tenn. 2003). A decision as to whether to enter a default judgment is reviewed for abuse of discretion. ***State ex rel. Jones v. Looper***, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000) (citing *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 100 (Tenn. 1984)).

> A party seeking to have a lower court's holding overturned on the basis of abuse of discretion undertakes a heavy burden. The abuse of discretion standard is intended to constrain appellate review and implies "less intense appellate review and, therefore, less likelihood of reversal." *BIF v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at * 2 (Tenn. Ct. App. July 13, 1988)[.] As a general principle, an appellate court will not reverse a decision that lies within the discretion of the trial court unless it affirmatively appears that the lower court's decision was against logic or reasoning and caused injustice to the complaining party. See *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). The fact that a decision is discretionary with a trial court necessarily implies that the trial court has a choice of alternatives among a range of acceptable ones; the reviewing court's job is to determine whether the trial court's decision is within the range of acceptable alternatives, given the applicable legal principles and the evidence in the case. See *BIF*, 1988 WL 72409, at * 3.

***Id.*** at 193-94. We find no abuse of the trial court's discretion in denying Claimant's motion for a default judgment.

### B.    The Prison Warden

Next, Claimant argues that "TDOC Wardens are not healthcare providers but administrators." She essentially argues that the warden had a duty "that supersede[d] that of the healthcare provider," to ensure that Mr. Dunigan received adequate medical care. Despite these arguments on appeal, there is not a single factual allegation referencing the prison warden in Claimant's formal complaint filed with the Commission, in her supplemental pleading, or in her initial claim filed with the Division of Claims Administration. Her first attempt to construe her claim as one against the prison warden came in her "Motion to Reconsider," which was filed after the Commission dismissed her complaint, and which was denied by the Commission. Because Claimant failed to allege a discernible claim against the prison warden, we find no merit in this issue as it is presented on appeal.

### C.    Failure to File a Certificate of Good Faith

Finally, Claimant's brief presents an issue regarding whether she "was prevented from knowing and/or ascertaining who the parties were to be sued and was therefore prevented from complying with TCA 29-[2]6-122." However, the section of Claimant's brief that should address this issue fails to provide any citations either to the record or to any relevant authority. Instead, she diverges into another discussion of why she believes her motion for default judgment should have been granted. She ends her argument by stating that this issue "should require no citation[.]" We disagree. "'Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.'" *Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011) (quoting *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000)); *see also **Tellico Village Property Owners Ass'n, Inc. v. Health Solutions, LLC***, No. E2012-00101-COA-R3-CV, 2013 WL 362815, at *3 (Tenn. Ct. App. Jan. 30, 2013) ("'Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal.'") (quoting *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)). "[P]arties must thoroughly brief the issues they expect the appellate courts to consider." ***Waters v. Farr***, 291 S.W.3d 873, 919 (Tenn. 2009). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." ***Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.***, 301 S.W.3d 603, 615 (Tenn. 2010).

Because Claimant failed to develop an argument regarding this issue and did not provide any citations to the record or to relevant authority, we deem this issue waived. While we realize the "legal naivete" of a pro se litigant, "we must not allow him an unfair advantage because he represents himself." ***Frazier v. Campbell***, No. W2006-00031-COA-R3-CV, 2006 WL 2506706, at *3 (Tenn. Ct. App. Aug.31, 2006) (citing *Irvin v. City of Clarksville*, 767 S.W.2d 649, 651-52 (Tenn. Ct. App. 1989)). "Pro se litigants who invoke the complex and technical procedures of the courts assume a very heavy burden." ***Irvin***, 767 S.W.2d at 652 (citing *Gray v. Stillman White Co.*, 522 A.2d 737, 741 (R.I.1987)). They are entitled to fair and equal treatment, but they must follow the same substantive and procedural requirements as a represented party, and they may not shift the burden of litigating their case to the courts. ***Whitaker v. Whirlpool Corp.***, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000).

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the Claims Commission. Costs of this appeal are taxed to the appellant, Pearlie Mae Dunigan, next of kin/personal representative of the Estate of Grover Dunigan, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.